## GALVESTON, H. & S. A. RY. CO. v. FORD.* (No. 7387.)

(Court of Civil Appeals of Texas. San Antonio. June 18, 1925. Rehearing Denied July 1, 1925.)

1. Master and servant ⬥276(5)—Under facts jury could not have found otherwise than that plaintiff was injured while riding and working on defective locomotive.

In fireman's action for personal injuries alleged to have been sustained on defective locomotive of defendant, held that under the facts jury could not have found that plaintiff was not injured while riding and working on defective locomotive.

2. Trial ⬥350(6)—Defendant not entitled to present to jury question which did not present defensive issue, but which was determinative of plaintiff's entire case.

In action for personal injury sustained by fireman while working on defective locomotive of defendant, where defendant claimed injuries were due to rheumatism, defendant was not entitled to present to jury question "Did plaintiff actually receive any real injury on the trip in question?" inasmuch as this did not present affirmative defense matter that rheumatism injured defendant, but rather presented issues on which plaintiff's entire case was founded.

3. Trial ⬥296(3)—Use of word "proximately" in charge held not confusing, where court properly defined it.

In action for injuries to fireman by defective locomotive, held it was not error to submit to jury whether defects in engine proximately caused or contributed to injuries of plaintiff, as against contention that word "proximately"

was confusing to jury, where word was properly defined in charge.

**4. Trial ⊚➡260(8)—Defense that injury resulted from rheumatism and not from defective engine held properly presented by general charge.**

In action for personal injuries sustained by fireman, by reason of defendant's defective locomotive, where court refused general charge presenting defense that rheumatism caused plaintiff's injury, which should have been presented in a special issue, *held* that a general charge by court properly presented such defense in a clear and more accurate manner than sought to be presented by defendant. ⸳

**5. Master and servant ⊚➡125(7)—Defendant railroad company held charged with knowledge of defective condition of locomotive.**

Where engine of defendant was badly worn, and had been in service for many years, under the circumstances defendant company was charged with knowledge of its defective condition.

**6. Master and servant ⊚➡125(1)—Where defendant charged with knowledge of defective condition of locomotive, there could be no issue as to defendant's anticipating result of its use.**

Where defendant was charged with the knowledge of defective condition of locomotive, and was charged with knowledge; that any prudent men would have possessed, that the use of such engine would probably result in injury to those using it, under the circumstances there could be no issue as to defendant's anticipating results of its use.

**7. Trial ⊚➡215—Where case submitted on special issues, charge on anticipation of results, held improper as submitting law of case.**

In action for personal injuries sustained on defective locomotive, where case was submitted to ·jury on special issues, a requested special charge by defendant as to anticipation of results was improper as seeking to have given a charge on the law of the case; it being improper to submit a special charge calling for a general verdict, where case is submitted on special issues.

**8. Master and servant ⊚➡293(1)—Charge defining "negligence" held correct and sufficiently complete.**

In fireman's action for personal injuries sustained on defective locomotive, charge instructing jury "that negligence is a failure to exercise ordinary care, and ordinary care is that degree of care which a person of ordinary prudence would exercise under the same or similar circumstances," *held* correct and sufficiently complete.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Negligence.]

**9. Damages ⊚➡132(3)—$25,000 held not excessive for injury to spine.**

$25,000 *held* not excessive, where evidence showed that plaintiff was a strong, robust man before the injury to the spine, weighing 220 pounds, that after injury he began to lose

weight and went down to 149 pounds in weight, constantly suffered in his back, hips, eyes, and head, was nervous, lost sleep, that he would always have a weak back, incapacitating him from work, and that his earning capacity before injury was $200 a month.

**10. Evidence ⊚➡471(13, 14)—Statement of wife that injured person was a "mental and physical wreck both" not objectionable as conclusion of witness.**

In action for personal injuries, where wife of injured person testified that he was a "mental and physical wreck both," such statement was not objectionable as being a conclusion of witness, where made after she had given a full and detailed account of injured's condition.

**11. Trial ⊚➡121(1)—Argument of counsel that jury would set bad precedent to find engine fit for service held not objectionable.**

In action for personal injuries sustained on defective locomotive, argument of counsel that, "under the facts of this case, you will set a bad precedent if you answer this engine was fit for service," *held* not objectionable.

**12. Master and servant ⊚➡278(6)—Evidence held to sustain verdict for fireman in action for injuries to spine sustained on defective locomotive.**

In fireman's action for personal injuries to spine, sustained on defective locomotive of defendant, evidence *held* to sustain verdict for plaintiff.

Appeal from District Court, Bexar County; R. B. Minor, Judge.

Action by R. B. Ford against the Galveston, Harrisburg & San Antonio Railway Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Baker, Botts, Parker & Garwood, of Houston, and Templeton, Brooks, Napier & Brown, of San Antonio, for appellant.

Davis & Long, Perry J. Lewis, H. C. Carter, Randolph L. Carter, and Champe G. Carter, all of San Antonio, for appellee.

FLY, C. J. This is an appeal perfected by appellant from a judgment for $25,000, recovered by appellee as the result of a trial by jury, in which the cause was submitted upon special issues. Appellee, in his petition, alleged that on October 20, 1922, he was in the employment of appellant as a locomotive fireman, and on said date was working on an engine sent out by appellant from San Antonio to Nueces gravel pit in Uvalde county, that the trip there and return to San Antonio was made on that date, and that the said locomotive engine was in such defective condition that it jumped, jolted, and jerked in such unusual manner as to render it unfit and dangerous for the employés in charge of the same, which defective condition was known or should have been known, by appellant. It was alleged that while in the course of his employment appellee was severely

and permanently injured through the defects in said engine.

The jury found that parts of the locomotive on which appellee rode as fireman were so worn and dilapidated as to render the locomotive unfit for service and dangerous to the employés operating it, that permitting such locomotive to be in such condition was negligence, and that such condition was the proximate cause of injuries to appellee, and that appellee was not guilty of contributory negligence. Upon these findings the jury based their verdict of damages, or, as tersely stated in appellant's brief:

"The jury, in answer to questions submitted to them, found that parts of the locomotive were so worn or out of place as to make them unfit for service and dangerous to defendant's employés thereon, that it was negligent in permitting the locomotive to be in such condition, that such condition proximately caused plaintiff's alleged injuries, and that he was damaged in the sum of $25,000."

The facts, if believed, as they undoubtedly were believed by the jury, showed that appellee received serious and permanent injuries to his person, through the movements of a defective engine furnished him by appellant, who was charged with full knowledge of the condition of such engine and the probable consequences of its use by its employés. The evidence showed that the engine became so rough on the way to Uvalde that the tools could not be kept in the tool box which sat on the floor of the cab, but bounced out of the box, the train indicators, showing the train was "Extra 822" were jolted out and had to be tied in with wires, and the flags were shaken off and lost. The employés examined the engine and found it in a very defective condition. Appellee had to constantly change his position on account of the roughness, so as to alleviate his pain, and at last it became so rough that, as he was standing by a window endeavoring to fix a latch that had burst off, he was thrown upon and into an empty open seat box, the top of which had been knocked off by the jumping and jolting of the engine, which resulted in injuries to his spine from which he will never recover.

[1] Under the facts, the jury could not have found that appellant was not injured while riding and working on the defective locomotive. He might have suffered from rheumatism at times before he rode on the engine, he might have been suffering with rheumatism at the time he rode on the engine, but all the facts tended to show that he received injuries while on the engine, caused by its defective condition.

[2] Appellant sought to have presented to the jury the question, "Did plaintiff actually receive any real injury on the trip in question?" and contends that it presents a defensive matter which should have been given at its request, and cites a number of cases

275 S.W.—30

sustaining the view that a defendant's defenses must be affirmatively presented to a jury when a request so to do is made by the defendant. The issue desired by appellant was not a defensive one, but one upon which the whole case of appellee depended, and without an affirmative answer to which appellee could not recover. The issue asked was not one of defense presented in the answer of appellant, but the ground advanced in the petition upon which appellee sought a recovery. Appellant did not ask a submission of the issue raised by his answer as to the injuries to appellee having been caused by rheumatism, and that was the affirmative defense presented by appellant. The cited cases might have been pertinent and proper had it requested the submission of an issue made by its answer, but this was not done, but it chose rather to ask for the submission of a negative issue amounting to the question, Did appellee make out his case? In the case of Railway v. Gorman, 112 Tex. 147, 245 S. W. 418, the railway company defended against a suit for damages to a shipment of horses, on the ground that one horse died from natural sickness after reaching its destination, and the judgment was reversed because an issue raising that issue was denied. The issue of defense that the horses were not damaged by the railway company was not asked to be submitted. That was not its defense. That was the plaintiff's issue; but appellant's defense, that the horse died from disease, was the defense. In this case appellant did not ask the submission of its defense, that rheumatism injured appellee, and not a defective engine. So it was in all the cases cited by appellant.

In one of the leading cases on the subject of giving requested charges affirmatively presenting defenses, that of Railway v. McGlamory, 89 Tex. 635, 35 S. W. 1058, a special defense was that the employé, when injured, was drunk, which contributed to his injury. That defense was presented in an abstract way. The court held that, this being true, the correct rule is that defendants had the giving of a charge which presented their defense. Appellant, in this case, pleaded and attempted to show that the injuries received by appellee were attributable in whole or in part to rheumatism but prepared no issue submitting that defense. It did not bring itself within the rule.

In the case of Railway v. Rowe (Tex. Com. App.) 238 S. W. 908, there was evidence that the deceased brakeman was brought to his death through what was denominated an "unavoidable accident," and the railway company requested an instruction presenting that issue, and it was held that it should have been given, although not pleaded, by the railway company. That may or may not be a sound proposition, but we are not now concerned with its soundness. The defense issue

was requested is the point. In this case it was not requested.

In the case of Hutchenrider v. Smith (Tex. Com. App.) 242 S. W. 204, that court said:

"It is the well-settled law of this state that every question of fact material to the defendant's defense, as pleaded, and which finds support in conflicting evidence, should, upon request, be submitted to the jury for their determination."

In the case of Gerhart v. Harris County (Tex. Civ. App.) 244 S. W. 1103, it was held:

"The evidence raises the issue that appellant's damage was occasioned by the acts of the navigation district in disposing of the spoil from its dredging operations in Buffalo Bayou. As that issue was affirmatively pleaded by Harris county as a defense, it should have been submitted to the jury on request."

All the cases cited by appellant are to the same effect that an affirmative defense must be presented when a request is made for its submission.

[3] The case as made by the petition of appellee was fully presented by the court, and under the issues presented by the court there was no escape by the jury from passing upon the question as to whether appellee was injured by the defective engine. The jury was first asked if the engine was defective, and if the appellant was negligent in permitting the use of the engine in such condition, and if the defects of the engine proximately caused or contributed to the injuries of appellee. Appellant seems to object to the use of the word "proximately," because it may have confused the jury. There was no impropriety in the use of the word, and undoubtedly the jury understood the charge. The meaning of the word was defined in the charge. The court said:

"In connection with question 3, you are instructed that an act or omission can be held to have proximately caused or proximately contributed to the occurrence only where the occurrence or some similar occurrence would have been a natural and probable result of such act or omission and ought to have been anticipated as such in the light of attending circumstances."

[4] Appellant asked a general charge presenting its defense of rheumatism causing appellee's injuries, which should have been presented in a special issue, and the court refused it, but gave a general charge presenting the issue of the rheumatism in a clearer and more accurate manner than that in which it was sought to be presented by appellant in its rejected charge. The defense of injuries resulting from rheumatism and not from the defective engine was clearly and fairly presented by the charge. The first, second, third, fourth, fifth, twelfth, thirteenth, fourteenth, fifteenth, sixteenth, twenty-first, and twenty-second propositions are overruled.

[5] The sixth proposition in appellant's brief complains of the refusal by the court to present a special charge asked by appellant on the subject of negligence. The charge was properly refused. The question of foreseeing or anticipating the result of negligence has been often raised and discussed in Texas, and some have possibly gone to an absurd extent. The case most often relied upon in discussions on proximate cause is that of Railway v. Bigham, 90 Tex. 223, 38 S. W. 162, and that is the one above all others to which appellant has anchored its argument on the alleged error of the court in refusing its special charge. The facts are that appellant owned a locomotive, a veteran in its service, which was the roughest of all its engines; that its bearings, springs, and tires were worn out; in fact the whole engine was badly worn. An old, experienced engineer said it "was the roughest engine I ever rode on in all my experience; * * * she pounded and knocked like a pile driver." It had been in service for years, and was in bad condition when appellee made the trip under consideration. Under the circumstances appellant was charged with the knowledge of the defective condition of the appliance furnished by it to its employés.

[6] The question of natural and probable result of a negligent act or omission belongs properly to an inquiry as to the proximate cause, and so they are discussed in the Bigham Case and it was held therein that:

"Since every event is the result of a natural law, we apprehend the meaning is that the injury should be such as may probably happen as the consequence of the negligence, under the ordinary operation of natural laws."

The law as therein stated was fully set out in the charge of the court defining proximate cause, wherein it is stated that the injuries must have been a natural and probable result of furnishing the defective engine, "and ought to have been anticipated as such in the light of attending circumstances." That charge is the law, and covered the issues in the case, and it was not error to refuse the charge requested by appellant. As said by the Court of Civil Appeals of the Second District, in the case of Fort Worth v. Patterson (Tex. Civ. App.) 196 S. W. 251:

"It is a familiar rule, as indeed illustrated by the cases which appellant cites, that a defendant must be held liable for the consequences of an act of negligence which, in the probable and natural course of the happening of events, results in an injury."

In this case appellant was charged with knowledge of the defects of its engine, and was charged with the knowledge, that any prudent man would have possessed, that the use of such engine would probably result in injury to those using it—not the identical injury but in some injury. Under the circumstances there could be no issue as to ap-

(275 S.W.)

pellant anticipating the result of using the defective engine. As said in Fort Worth v. Cooper (Tex. Civ. App.) 241 S. W. 282:

"Neither is it essential, in order to make a negligent act the legal proximate cause of an injury, that the particular injurious consequences and the precise manner of their infliction could have been reasonably foreseen, but some like injury produced by similar intervening agencies."

[7] The charge requested by appellant as to anticipation of results is one often condemned by this and other Texas courts as seeking to have given a charge on the law of the case in a case submitted on special issues. The special charge arrayed the facts, and instructed the jury if they found those facts they should return a certain verdict. This was not permissible. Worden v. Kroeger (Tex. Civ. App.) 184 S. W. 583; Railway v. Harrington (Tex. Com. App.) 235 S. W. 188; Anderson v. Reich (Tex. Com. App.) 260 S. W. 162. As said in regard to a charge similar to the one requested by appellant, in the cited case of Worden v. Kroeger:

"It is improper to submit a special charge calling for a general verdict where the case is submitted upon special issues."

That language is quoted and approved in the cited case of Railway v. Harrington. The sixth, eighth, ninth, and tenth propositions are overruled.

[8] The seventh proposition is overruled. In connection with the special issues, the court instructed the jury:

"That negligence is the failure to exercise ordinary care, and ordinary care is that degree of care which a person of ordinary prudence would exercise under the same or similar circumstances."

The charge is terse and correct, and is attacked in a most general way, not for any error, but because it was not full enough. It was all that was required.

The undisputed evidence did not show that any engine was as rough as the one on which appellee was injured, but, on the other hand, that it was the roughest of them all; nor did it show that injuries on such an engine were not only unusual but "absolutely unheard of," nor "that defendant could not reasonably have anticipated or foreseen injury to plaintiff by reason of his being required to fire on said trip"; nor did the "undisputed evidence" show "that defendant was not negligent in permitting the locomotive to be in the condition it was in or in requiring plaintiff to fire it on said trip." If the evidence had shown all those facts, of course, it would be a great disregard of justice to permit a finding of negligence on the part of appellant to stand. Unfortunately for appellant, the record fails to disclose any such statement of uncontroverted facts. With such facts it would be unparalleled for a court of justice to permit a verdict against them to stand for a moment. There is no basis for the eleventh proposition advanced by appellant.

The true issues in the case were submitted by the court, and the seventeenth, eighteenth, and nineteenth propositions are overruled.

[9] It is not claimed by appellant that the jury were in any manner moved or actuated by malice or prejudice in returning their verdict for $25,000, but it is argued that the evidence shows that, for years previous to his trip on the rough-riding engine, appellee was afflicted with physical ailments which his own doctors admit could produce his physical condition. In the face of that argument it is only necessary to remember that at the time he claimed he was injured by the engine the physicians testifying for appellant stated that he was a strong, robust man. Dr. McCamish, a witness for appellant, stated:

"I knew Mr. Ford before he was hurt; I had seen him at times. It is a fact that he was a very robust, stout-looking man—stout and strong and fat. I think he weighed about 220 pounds at the time he was riding on this engine."

He admitted that he did not look like a well man at the trial, and indeed the uncontradicted evidence showed that he was 37 years old when hurt, and had begun at once to lose flesh, and went down from 220 pounds of flesh to about 149 pounds. His spine had been injured, and it was shown that he constantly suffered in his back, hips, eyes, and head. He was very nervous, and did not average three hours sleep at night. It was shown that he was growing thinner and weaker, and such condition was permanent and progressive. One doctor swore that appellee "will always have a weak back, he will have a back that will cause him trouble, and he will never be able to work." The evidence justifies the amount of the verdict. He was earning $200 a month when hurt, and can earn nothing now. Heavier verdicts have been time and again approved for injuries not more aggravated than those of appellee. The rules that govern appellate courts in considering whether or not verdicts are excessive are fully stated in the case of Railway v. Stevens (Tex. Civ. App.) 94 S. W. 395, and by Chief Justice Conner, speaking for the Court of Civil Appeals of the Second District, in Railway v. Steele, 264 S. W. 503, and need not be repeated here. The twentieth proposition is overruled.

[10] In the twenty-third proposition appellant complains that the wife of appellee was permitted to state, in regard to her husband, "he is a mental and physical wreck both." This was objected to only on the ground "that said statement was a conclusion of the witness." The statement was made after a full and detailed account of the condition of appellee had been given by the witness. She had been with him ever since he was

hurt, all the time. She knew his condition better than any one perhaps, even though a physician, and she stated as a fact that her husband was "a mental and physical wreck." She was competent to swear to that fact, and it was not error to permit her to do so. It was not contended in the court below, it is not contended here, that Mrs. Ford did not know the condition of her husband, but merely that her evidence as to his condition was her conclusion. It was a fact, as much so as if she had, under proper circumstances, sworn that he was blind or had lost an arm. The opinion in Roth v. Travelers' Association, 102 Tex. 241, 115 S. W. 31, 132 Am. St. Rep. 871, 20 Ann. Cas. 97, cited by appellant, while not very clear, is probably properly interpreted in the syllabus, where it is stated:

"Testimony of various witnesses as to physical and mental condition of injured person held inadmissible because it was mere opinion of one not an expert and not stating the observed facts."

The testimony of Mrs. Ford was not objected to because she was not an expert, nor because she had not stated the facts on which she based her statement. She may have been an expert, and we know she stated in detail the facts on which she relied. The proposition is overruled. Galloway v. Railway (Tex. Civ. App.) 78 S. W. 32; Duerler Mfg. Co. v. Eichorn, 44 Tex. Civ. App. 638, 99 S. W. 715; Power Co. v. Baugh (Tex. Civ. App.) 270 S. W. 1101.

[11] One of the counsel for appellee stated in his closing argument to the jury. "Under the facts of the case, you will set a bad precedent if you answer this engine was fit for service," and appellant's attorney "promptly objected to said statement and remark of plaintiff's attorney." What the ground of objection was is not disclosed, and we might surmise that the objection was made because appellant could not understand why it would be a bad precedent. Certainly it was not made because the argument was of an inflammatory or exciting nature, nor that it had a tendency to excite prejudice or malice in the breasts of the jury. It seems to be of a very mild nature indeed, but still the court "instructed the jury not to consider the same." We conclude the jury did not consider it. Appellant states:

"The courts have frequently held that argument of the character shown by this bill of exceptions is improper and constitutes reversible error."

This court has not had the privilege of seeing any such case. Certainly the cases cited do not sustain the proposition. The grounds of attack on the remark of counsel is still undisclosed; nothing in the brief showing any effect it may have had on the defense of appellant. Under the circumstances of this case it might possibly be a bad precedent for a jury to find that an engine in the condition in which it was shown to be was fit for service, because it is always a bad precedent for a jury to find directly in the face of facts. There is no merit in the proposition, and it is overruled.

[12] The twenty-fifth proposition assails the sufficiency of the evidence to sustain the verdict, and is disposed of adversely to appellant in considering other propositions. The evidence is sufficient to sustain the verdict. The twenty-sixth proposition is vague and indefinite, and is overruled.

The judgment is affirmed.