LOUISIANA RY. & NAV. CO. OF TEXAS v. ELDRIDGE. (No. 9833.)

Court of Civil Appeals of Texas. Dallas.
March 5, 1927.

Rehearing Denied April 23, 1927.

1. Master and servant ⚖═112(2)—Railroad was bound to exercise ordinary care to keep cross-ties in reasonably safe condition for bridge man.

In action for personal injuries sustained by member of bridge and building crew, when rotten cross-tie gave way when he stepped on it while performing his duties, railroad *held* bound to exercise ordinary care to keep cross-ties in reasonably safe condition.

2. Master and servant ⚖═101, 102(8)—Master must exercise ordinary care to furnish reasonably safe place.

The law imposes upon the master the duty to exercise ordinary care to furnish the servant with a reasonably safe place in which to work.

3. Master and servant ⚖═124(1)—Master must make inspection to discover defects in working place expected to result from passing of time.

The law imposes upon the master the duty to make inspection for the purpose of discovering such defects in servant's working place as may be expected to result from the passing of time, in view of character of use and changes and mutations.

4. Master and servant ⚖═124(6)—Railroad held bound to make careful inspection to ascertain defective condition of cross-tie on which employee stepped.

Where railroad tie on which employee stepped while he was performing his duties had apparently sound surface, and was surrounded by growth of grass so that its defective condition could have been discovered only by careful inspection, railroad was bound to make such inspection.

5. Master and servant ⚖═125(6)—Railroad held chargeable with notice of rotten condition of tie.

That railroad tie was so rotten that it crushed under employee's weight, so that it must have been defective for a long time, that only its surface presented a sound condition, and that its condition underneath was concealed by the growth of grass on either side,

*held* to warrant imputing to railroad notice of its condition.

6. Trial ⚖═296(9)—Instructions in servant's action for injuries held, in view of other instructions, not error as being on weight of evidence and assuming master's negligence.

In action by injured employee against railroad, instruction to find for railroad if injuries were not proximate result of negligence of railroad, and reading, "if you believe * * * that plaintiff's foot was injured as the proximate result of defendant's negligence, * * *" *held* not error because omitting the qualification, "if any," as being on the weight of the evidence and assuming railroad's negligence in view of other instructions.

7. Trial ⚖═295(6)—Instruction as to master's negligence must be construed as a whole.

Court must construe portion of instruction to find for master if injuries were not proximate result of negligence of master, in connection with other portions of the charge dealing with negligence.

8. Appeal and error ⚖═1033(5)—Instruction that injured plaintiff could not recover if condition of cross-tie was obvious to person using ordinary care held not ground for complaint by defendant.

In employee's action for injuries against railroad, instruction that if it was necessary for plaintiff to walk on cross-ties he was not bound to inspect them, and if in the discharge of his duties in an ordinarily careful manner plaintiff would have known of the rotten condition of the cross-tie he might not recover, *held* not ground for complaint by railroad, since it imposed a greater duty than plaintiff was required to carry.

9. Master and servant ⚖═217(7)—Duty of inspection rests on master and not on servant.

Duty of inspection of instrumentalities rests upon the master, and not upon the servant.

10. Master and servant ⚖═217(1)—Servant assumes risk of defects which he knows or could have known in discharge of duties with ordinary care.

Both defects and dangers which are known to the servant and defects which in the discharge of his duties with ordinary care would or could have been known to the servant are assumed by him.

11. Master and servant ⚖═217(21)—Instruction on railroad employee's assumption of risk of injury by stepping on rotten tie held correct.

In employee's action against railroad for injuries when cross-tie gave way when he stepped on it, and his foot was thrown across rail and crushed by car, instruction that if it was necessary or proper for employee to walk on cross-ties he was not bound to inspect cross-ties, but if he knew of rotten condition of cross-tie or condition was obvious to person using ordinary care, or he would have known of condition in the discharge of his duties in an ordinarily careful manner, then he assumed the risk, *held* correct.

─────────────

⚖═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**12. Trial ☞260(1)—Refusal of special charges covered by court's charge is not error.**

Refusal of special charges on phases of case correctly covered by court's charge is not error.

**13. Damages ☞216(3)—Instruction held not erroneous as authorizing double recovery by injured railroad employee.**

In employee's action for injuries, instruction to consider any pain that plaintiff suffered until present time, any diminishment in earning capacity until present time, and to consider any pain that plaintiff would suffer in future and any diminishment of earning capacity in the future, *held* not error as authorizing double recovery.

**14. Appeal and error ☞1033(5)—Instruction that to recover for aggravation of injuries employee must have employed reputable physician held not ground for complaint by defendant.**

In action by employee against railroad for personal injuries, instruction requiring employee to have employed a reputable and regularly practicing physician in order to recover for aggravation of his injuries caused by mistakes of the physician in treating the injuries, *held* not ground for complaint by defendant; employee being required only to exercise ordinary care in employing physician.

**15. Damages ☞213—Requested instruction held erroneous as precluding recovery for aggravation of injuries of employee caused by failing to procure proper medical attention, without requiring employee's negligence.**

Requested instruction that if employee failed to procure proper medical attention and that as the proximate result thereof the injury became aggravated, not to allow damages for such aggravation, *held* erroneous in not requiring a finding that such aggravation was caused by negligence of employee.

**16. Appeal and error ☞1064(1)—Instruction on employee's failure to procure proper medical attention held not ground for complaint as submitting issue as one of both proximate cause and contributory negligence.**

Instruction on question of employee's neglect of injury to foot and failure to properly procure medical attention therefor as affecting right to recover damages *held* not ground for complaint by defendant, as submitting the question as one of both proximate cause and contributory negligence, even assuming that question should have been submitted as one of proximate cause.

Appeal from District Court, Hunt County; Newman Phillips, Judge.

Suit by D. E. Eldridge against the Louisiana Railway & Navigation Company of Texas. From a judgment in favor of plaintiff, defendant appeals. Affirmed.

McMahan, Dohoney & Dial, of Greenville, and Touchstone, Wight, Gormley & Price, of Dallas, for appellant.

H. L. Carpenter, of Greenville, for appellee.

VAUGHAN, J. This was a suit for personal injuries alleged to have been received by appellee while in appellant's service as a member of its bridge and building crew, while engaged in moving along the track a push car loaded with cross-ties. Appellant alleged that while so engaged he stepped on the end of a cross-tie that was apparently sound but so rotten and defective that it broke under his weight, which caused him to fall and in some way his right foot was thrown on the rail and run over by the wheel of the car. He alleged negligence on the part of appellant in permitting the defective cross-tie to be in the track. Appellant's answer consisted of a general demurrer, general denial, and special pleas of contributory negligence and assumed risk, and alleged that appellant was engaged in interstate commerce at the time and that appellee was employed in the prosecution thereof, and, further, that if appellee was injured the injury resulted from a risk ordinarily incident to the business in which he was engaged and from an unavoidable accident. The trial was by jury, the court in a general charge submitting the several issues above referred to, and resulted in a verdict and judgment for appellee for $1,000, from which judgment this appeal was prosecuted. Appellant contends that the evidence made out a case of assumed risk and therefore the court erred in refusing a peremptory instruction for appellant and in refusing to grant a new trial on the ground that the verdict was not sustained by the evidence.

The verdict of the jury necessarily was a finding in favor of appellee on the following issues: That appellee was in the service of appellant as a member of its bridge and building crew and while so engaged, in appellant's switching yards at Brashear, a station on appellant's line of railway, in the course of his employment, sustained personal injuries alleged by him as the result of appellant's alleged negligence and thereby suffered damages in the sum of $1,000; that appellee was not guilty of contributory negligence; that his injuries were not the result of one of the dangers ordinarily incident to the business in which he was engaged and was not the result of an unavoidable accident, and that, allowing for any aggravated condition of appellee's injuries caused by his negligence, if any, after his injuries, he was entitled to $1,000 as damages originally sustained by him as the result of appellant's negligence. As the record discloses that there was before the jury sufficient evidence upon which such findings could have been predicated, we adopt as our findings of fact the facts that were so necessarily found by said verdict.

[1] Appellant's first proposition, that it owed no duty with reference to the maintenance of its track in its station and switch

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

yards at Brashear.to appellee or any one so circumstanced other than for the running of its engines and cars over such tracks, cannot be sustained in the light of the facts showing that appellant used such tracks as a place for its servants engaged in its bridge and track service to carry on their work, which excludes the idea that such tracks were used and intended by appellant to be used only for the purpose of running its trains. Therefore it was incumbent upon appellant to exercise ordinary care to maintain such tracks in a reasonably safe condition for its servants to do the work they were engaged in, such work requiring the use of such tracks. Certainly appellee's duties as a bridge man did not impose upon him the duty to inspect the track other than bridges and tracks thereon. The fact that the tracks were primarily. built for the running of appellant's engines and cars over them for the purpose of delivering freight and transporting passengers on its line of railway, that being the major purpose for which said tracks were built and intended to be used, could not absolve appellant from its common-law duty to exercise ordinary care to maintain such portion of its tracks in a reasonably safe condition for those of its employees required by the very nature of the work prosecuted by them to use such tracks. In other words, such portion of its track so used constituted a part of its premises on which appellee and others engaged in the service of appellant as members of its bridge crew were not only expected, but from the very character of the work required, to use in the performance of their duties as such, and this, notwithstanding the primary purpose for which said tracks were constructed, required of appellant the exercise of ordinary care to keep said "premises" in a reasonably safe condition for such employees. I. & G. N. Ry. Co. v. Reiden, 48 Tex. Civ. App. 401, 107 S. W. 661; St. L. S. W. Ry. Co. v. Ford, 56 Tex. Civ. App. 521, 121 S. W. 709; Lancaster v. Fitch (Tex. Civ. App.) 239 S. W. 235, same case by Supreme Court, 112 Tex. 293, 246 S. W. 1015.

[2, 3] Appellant's second proposition is based upon its exception to the fourth paragraph of the court's charge, reading as follows:

"If you believe from the evidence in this case that on or about the 23d day of July, 1925, the plaintiff was in the service of the defendant as a member of its bridge and building crew, and if you further believe that while in the discharge of his duty in such service that he was engaged with others in moving a push car loaded with material (at or near Brashear in Hopkins county, Tex.), and if you further believe from the evidence that while in the discharge of his duty and engaged in said work that he was walking upon the end of the cross-ties in the roadbed, and if you further believe that it was necessary or proper for him to step on the cross-ties while so engaged; and if you

further believe that the plaintiff stepped upon a cross-tie which was defective and rotten and that because of the cross-tie being rotten, if it was, that he was caused to fall and that in so doing one of the wheels of the push car ran over his foot causing him to sustain all or any of the injuries described in his petition in this case, and if you further believe that in permitting the rotten cross-tie to be in said track, if it was, defendant was guilty of negligence and that such negligence, if any, was the proximate cause of the plaintiff's injuries, if any, then you will return a verdict for the plaintiff unless you find for the defendant under other instructions hereinafter given you."

[4] This was excepted to upon the ground that the evidence showed the cross-tie was apparently sound and did not show that appellant had any notice that it was defective, and it not appearing from the evidence that the appellee was required to walk on the ends of the cross-ties in the discharge of his duties, or that it was necessary that he should do so, the appellant did not owe him any duty with reference thereto, and that failure on the part of appellant to discover the condition of the cross-tie was not negligence in so far as appellee was concerned. This raises in effect the identical question presented by appellant's first proposition. Appellant's conclusion as to the legal effect that should be given to the evidence, allowing that natural effect flowing from the proof of each fact which developed the correspondence of appellee with the nature and character of his work, and having regard for the surroundings immediately before and at the time of the accident, cannot be sustained without disregarding that ancient, sane, and wholesome rule of law governing the rights and liabilities of master and servant, which makes it the duty of the master to use ordinary care to furnish the servant with a reasonably safe place to work and comprehends the making of such inspection for the purpose of discovering defects therein such as, from the character of use and the changes and mutations therein, may be expected to result from the passing of time. To hold otherwise would be to disregard the known ravages of time, especially when coupled with constant use, a law of destruction with which all are presumed to be familiar, viz., that nothing abides in its original state; that all things are subject to sure decay, the work of which, whether fast or slow in developing, may nevertheless with absolute certainty be expected. To sustain appellant's position would be but to hold, in effect, that, having placed the cross-tie in its roadbed in good condition, it had thereby discharged its duty to exercise ordinary care in furnishing appellee with a reasonably safe place to work, and that no further duty rested upon it in that respect as long as same remained *apparently* sound, or until it had acquired notice of its defective condition, and that it was relieved from making such inspection as necessary to have dis-

covered its hidden defect because superficially it appeared to be sound. This is not what we understand to be the rule of law governing the rights of the parties under the established relationship that existed between appellant and appellee at the time of the accident.

[5] Appellant made no proof of inspection, nor sought to bring itself within the benefit of the rule of inspection, but, had it done so, as the defective condition of the cross-tie could only have been discovered by careful inspection, its defects being hidden by the apparently sound surface and a growth of grass around the end of the cross-tie, the exercise of proper care to furnish appellee with a reasonably safe place to work required that character of inspection to be made. G. H. & S. A. Ry. Co. v. Davis, 27 Tex. Civ. App. 279, 65 S. W. 217; Gammage v. Gamer (Tex. Com. App.) 209 S. W. 389 (Tex. Sup.) 213 S. W. 930. Furthermore, we feel called upon to make the following observation: The condition of this cross-tie—the cause of appellee's injuries—from the very nature of things, must have existed for a long time. It was so rotten that it crushed under appellee's weight. Only the surface presented a sound condition. Its condition underneath was further concealed by the growth of grass on each side of the cross-tie. This warrants imputing to appellant notice of such defects. G. H. & S. A. Ry. Co. v. Ford (Tex. Civ. App.) 275 S. W. 463; City of Weatherford v. Veit (Tex. Civ. App.) 196 S. W. 986.

[6] The following portion of the fifth paragraph of the court's general charge was excepted to upon the ground that same was upon the weight of the evidence and assumed that appellant was negligent, "or if you believe he was injured but if you do not believe that his injuries were the proximate result of negligence of the defendant, you will return a verdict for the defendant," and the following portion of the supplemental charge of the court was objected to upon the same grounds:

"But if you believe from the evidence that plaintiff's foot was injured as the proximate result of defendant's negligence in the respects submitted to you in the court's general charge. * * *"

Taking the charge as a whole, it would indeed be a strained construction of its language to say that the above paragraphs could have impressed the jury that in the opinion of the court certain facts existed, viz., facts sufficient to establish that appellant was guilty of negligence as alleged by appellee. Certainly it does not contain the vice of being on the weight of the evidence. To so hold would be to say that the omission of the words "if any" from the above paragraphs destroyed the effect and meaning of all other language of the charge, where the words "if any" are used in connection with each reference to the question of negligence. In the court's definition of negligence, and in the application of that rule of law to the facts, the words "if any" are used with careful, guarded precaution. In the paragraph of the supplemental charge objected to, the court directed the jury, by the words "negligence in the respects submitted to you in the court's general charge," to section 4, supra, the following language of which, by such reference, was in effect incorporated within said questioned paragraph, viz.:

"And if you further believe that in permitting the rotten cross-tie to be in said track, if it was, defendant was guilty of negligence, and that such negligence, if any, was the proximate cause of the plaintiff's injuries, if any, then you will return a verdict for the plaintiff, unless you find for the defendant under other instructions hereinafter given you."

[7] This certainly freed said paragraph from the objections made by appellant. This is not the only effect that should be given to this reference to the court's general charge, for it could but have the additional effect of directing the mind of the jury to that portion of the court's general charge submitting for their consideration the issues in reference to the alleged negligence of appellant. Certainly it would be going far afield to say that notwithstanding that this particular issue had been so carefully safeguarded that because of the language, "or if you believe he was injured, but if you do not believe that his injuries were the proximate result of negligence of the defendant, you will return a verdict for the defendant," that the jury could gather from such language that there rested in the mind of the court the belief that negligence on the part of appellant had been established. This paragraph must be construed in connection with the other provisions of the charge dealing with the question of negligence, where, in each reference to that issue, the words "if any" were properly and timely used. The language of the charge objected to—"negligence of the defendant" —only referred to the result of the negligence of the appellant found to have been established by the evidence before them, the charge being in effect this: Although you may believe that appellee was injured as alleged by him, yet if you do not find that such injuries were the proximate result of negligence of appellant, the appellee cannot recover. This does not assume that negligence had been established, but left that entirely with the jury. It is not upon the weight of the evidence, for there cannot be deduced from this language an inference that the appellant "was guilty of negligence." In other words, giving effect to this provision of the charge, the jury was required to find from the evidence that the injuries received by the appellee as found by them were the proximate result of appellant's negligence before they

could return a verdict in favor of appellee. We cannot accept appellant's viewpoint in reference to the two provisions of the court's charge challenged, and its objections thereto are overruled.

[8] Appellant seriously objects to the sixth paragraph of the general charge on assumed risk, viz., "If it was necessary or proper for the plaintiff to walk upon the cross-ties at the time in question, then it was not the duty of the plaintiff to inspect the cross-ties where he was walking," because the same was on the weight of the evidence and unauthorized by the pleadings or evidence, and also to that part of said paragraph reading as follows: "Or if in the discharge of his duties in an ordinarily careful manner, the plaintiff would have known of the rotten condition of the cross-tie"—because the same was not a correct statement of the law of assumed risk, as it involved a question of ordinary care in the discharge of appellee's duties. This charge plainly informed the jury, as to the law of the case on this issue, that if the condition of the cross-tie was open and obvious to a person using ordinary care, that appellee could not recover. This, if error, was against appellee, in that it made more onerous the duty resting upon him in reference to discovering the condition of the cross-tie than that which is accepted as the true measure thereof, viz., that if the employee, in the ordinary discharge of his duties, must necessarily have known of the defect, then he could not recover." Missouri, Kansas & Texas Ry. Co. v. Hannig, 91 Tex. 347, 43 S. W. 508, from which we quote as follows:

"We understand the law to be that when the servant enters the employment of the master, he has the right to rely upon the assumption that the machinery, tools and appliances with which he is called upon to work are reasonably safe and that the business is conducted in a reasonably safe manner. He is not required to use ordinary care to see whether this has been done or not. He does not assume the risks arising from the failure of the master to do his duty, unless he knows of the failure and the attendant risks or in the ordinary discharge of his own duty must necessarily have acquired the knowledge. Bonnet v. Railway Co., 89. Tex. 72 [33 S. W. 334]; Railway v. Bingle, ante [91 Tex.] 287 [42 S. W. 971]."

[9, 10] Appellant also charges the court with error in refusing the following special charges:

"Upon entering defendant's employment plaintiff assumed the risk of all such dangers as were ordinarily incident to the business in which he was engaged, but he did not assume the risk of dangers that were proximately caused by negligence upon the part of defendant or its employees of which he had no notice.

"Now if you believe from the evidence that plaintiff was injured while in defendant's employment, and you further believe that the danger of falling and receiving an injury while working around a push car was ordinarily incident to such work, and you do not believe from the evidence that plaintiff was injured as a proximate result of negligence upon the part of defendant, then you will find for the defendant."

"If you believe from the evidence that plaintiff was familiar with the construction of defendant's track and the condition of the ends of the cross-ties projecting upon the outside of the rail, and realized the danger of stumbling or being caused to fall thereby, and you further believe from the evidence that with such knowledge plaintiff voluntarily placed himself in a position alongside the push car he was working with where he might be caused to fall by reason of the ends of the cross-ties, then plaintiff assumed the risk of danger and injury, and if you so find you will find for the defendant."

[11, 12] Paragraph 6 of the court's general charge, as applied to the facts, properly presented the rule of law by which the issue of assumed risk raised by such facts should be determined, and submitted the issue that was made by the evidence, viz., whether or not appellee's fall and injury was caused by the alleged defective condition of the cross-tie. There was no evidence on this issue showing, or tending to show, that appellee's injuries were caused by other than the defective cross-tie; and under the court's instructions the jury was given no opportunity to find for appellee on any other ground. In this jurisdiction it is a well-settled rule of law that the master owes the duty of inspection of instrumentalities and that the servant does not; that the servant assumes the risk of defects and dangers of which he knows or of such defects as in the discharge of his duties with ordinary care he would or could have known. Railway v. Smithers, 228 S. W. 641. No other meaning could have been gathered by the jury from the charge of the court than that if it was necessary or proper for the appellee to walk upon the cross-ties at the time in question, then it was not the duty of appellee to inspect the cross-tie while he was walking, but if he knew of the rotten condition of the cross-tie (if it was rotten), or if the condition of the cross-tie was open and obvious to a person using ordinary care for his own safety, or if in the discharge of his duties in an ordinarily careful manner appellee would have known of the condition of the cross-tie, then in such case appellee assumed the danger or risk of injury, if any, in stepping on it, and in either event their verdict should be for appellant. This certainly presented this issue agreeably to the holding in Railway Co. v. Hannig, supra, which in our judgment announces a rule of law just and correct for the purpose of measuring and determining the rights and liabilities of appellant and appellee alike. Therefore we hold that the court did not err in refusing special charges Nos. 2 and 3 requested by appellant.

[13] By its sixth proposition appellant

challenges the charge of the court on the measure of damages on the ground that it authorized a double recovery. We think it sufficient, to demonstrate the want of merit in this contention, to quote the provision of the charge so challenged:

"If you find for the plaintiff you will allow him such a sum as if paid at this time will reasonably and fairly compensate him for the injuries, if any sustained by him, diminishing the amount if he was guilty of contributory negligence as directed in paragraph 5 above, and in arriving at such sum you may take into consideration whatever pain and mental anguish if any, that the plaintiff has suffered as a result of said injuries from their date until the present time, and if you believe from the evidence that as a result of his injuries, if any, that his capacity to work and earn money has been diminished from the date of the injury to this time you may take such fact into consideration, and if you believe from the evidence that as a result of his injuries, if any, that the plaintiff will in the future suffer physical pain and mental anguish or that his ability in the future to labor and earn money will as a result of his injuries, if any, be diminished, you may take such fact into consideration in arriving at the amount of your verdict." T. & P. Ry. Co. v. Morin, 66 Tex. 225, 18 S. W. 503; I. & G. N. R. Co. v. Butcher, 98 Tex. 462, 84 S. W. 1052; M. K. & T. Ry. Co. of Texas v. Aycock (Tex. Civ. App.) 135 S. W. 198.

This assignment is overruled.

[14] On the issue raised by the pleading and evidence to the effect that appellee's original injury was slight, that he neglected and failed to properly procure medical attention and treatment and failed to take precautions against infection, and that as a result of this negligence on his part his foot became infected and the condition from which he complained resulted from infection produced by his own negligence, the court charged the jury as follows:

"If you believe from the evidence that plaintiff did receive an injury to his foot upon the occasion in question, but that said injury was slight and that by the exercise of ordinary care in its treatment he would have recovered from the effect thereof in a reasonable time without serious results, and if you further believe from the evidence that plaintiff failed to exercise ordinary care to avoid infection and to procure proper medical treatment, and that as a result of such failure, if he did fail, his foot became infected and the condition thereof aggravated, and that such aggravation and the disability complained of by him was proximately caused or contributed to by the plaintiff's negligence in the respects above referred to, if he was negligent, then if you find for the plaintiff in any amount you will diminish his damages in proportion to such aggravation of his injuries, if any, with which you will find he was chargeable.

"But if you believe from the evidence that plaintiff's foot was injured as the proximate result of defendant's negligence in the respects submitted to you in the court's general charge, and if you further believe that the plaintiff employed a reputable and regularly practicing physician to treat said injuries, if any, and that he exercised ordinary care for his foot in so doing if he did, and if you believe that he substantially followed the physician's directions in the treatment of said foot, but that said physician made a mistake in prescribing said treatment, which aggravated and made the condition of the foot worse, then you are instructed that the plaintiff would be entitled to recover for the impaired use, if any, of said foot and the physical and mental pain, if any, regardless of any mistake, if any, which may have been made by the physician treating said foot, provided that such impaired use, if any, and the pain, if any, was a proximate result of said original injury to the foot, if any,"

—which was excepted to by appellant on the following grounds: (a) That same failed to submit as an issue whether or not appellant properly secured medical attention; (b) that same instructed the jury that if appellee employed a reputable and regularly practicing physician and substantially followed such physician's directions in the treatment of his foot he would not be guilty of contributory negligence because it was upon the weight of the evidence; (c) that that part of the instruction with reference to mistake by the physician in the treatment of appellee's foot which aggravated the condition, etc., was not authorized by the pleadings and evidence; (d) that the last paragraph was not authorized by the pleading and evidence and was not a correct statement of the law with reference to the matters referred to.

Special charge No. 5, requested by appellant as being applicable to this feature of the case, which was refused by the court, was as follows:

"If you believe from the evidence that plaintiff did receive an injury to his foot upon the occasion in question, and you further believe from the evidence that said injury was only a slight one and that with proper attention and medical treatment it would have healed without any serious results, and you further believe from the evidence that plaintiff failed to promptly procure proper medical attention and treatment, and that as a proximate result of such failure upon his part, if he did fail, his foot became infected and the condition thereof aggravated, and that the physical pain and mental anguish claimed by him and the impaired use of his foot and inability to work claimed by him was the proximate result of his failure to take proper precautions for his own protection, if any, and his failure to procure prompt and proper medical attention and treatment, if any; then if you should find for the plaintiff, you will not allow him any damages on account of conditions, pain, and suffering proximately caused by his failure, if he did fail in the respects above referred to."

[15, 16] We know of no rule of law that would have required appellee to have employed a "reputable and regularly practicing physician." However, the charge objected to placed that burden upon him. We think this

was far more favorable to appellant than allowed by law. Appellee was only required to exercise ordinary care in employing a physician for the care and treatment of his injuries. Having exercised such care in the employment of a physician and the jury having so found and there being evidence to support such finding, he was entitled to recover for any aggravation of his injuries caused by the mistakes, if any, made by the physician so employed by him. However, the charge as given carefully restricted appellee's measure of recovery to such damages as proximately resulted from the original injuries caused by appellant's negligence. The special charge requested by appellant was incorrect in that it directed the jury to charge appellee with the aggravation of his injuries without requiring as a preliminary to such conclusion a finding that such aggravation was caused by his negligence, viz., his failure to exercise ordinary care in the treatment of his injury. This special charge did not recognize the rule of law that any injury naturally flowing from the original wrong, without appellee's own negligence or any other intervening cause, would properly be held to have been caused by appellant's negligence. Appellant contends that the supplemental charge given by the court treats the question of appellee's neglect of his foot and his failure to properly procure medical attention and treatment as one of contributory negligence, when same presented a question of proximate cause, and that as its charge requested submitted it as a question of proximate cause of the aggravated condition of appellee's foot and as resulting from infection arising from his own negligence, the court erred in refusing same. It is very apparent from the language of the charge objected to that this question was submitted as a question of both "proximate cause" and "contributory negligence," viz., "and that such aggravation and disability complained of by him was proximately caused or contributed to by the plaintiff's negligence in the respects above referred to"; therefore conceding, which we are not prepared to do, that the question should have been submitted as one of proximate cause, the fact that the court did submit it both as one of proximate cause and as one of contributory negligence cannot be complained of by appellant as being material error affecting its rights. This because the only question that was required to be submitted in this respect was whether or not the condition of appellee's foot had been aggravated by negligence on his part whereby any of the injuries alleged to have been sustained and suffered by him resulted from infection arising from his own negligence. This is manifest from the fact that the application of this law was to relieve appellant of the liability to respond in damages for injuries due solely to appellee's failure to exercise ordinary care in the treatment of his injuries; that is, from aggravation beyond the extent of the injury suffered as a proximate cause of the acts of negligence charged against appellant. This protection the court's charge amply afforded appellant, and the court did not err in giving the instructions challenged or in refusing to give the special charge requested on this issue. M. K. & T. Ry. Co. v. Aycock, supra.

We have carefully considered all questions raised by the propositions presented by appellant, and, having found no reversible error, we are of the opinion that the judgment should be affirmed; and it is so ordered.

Affirmed.